**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JALEN DEMERE GIBSON | : | |
| | : | |
| Appellant | : | No. 50 WDA 2025 |

Appeal from the PCRA Order Entered December 16, 2024
In the Court of Common Pleas of Cambria County
Criminal Division at No(s): CP-11-CR-0001051-2017

BEFORE: BOWES, J., NICHOLS, J., and KING, J.

MEMORANDUM BY BOWES, J.: **FILED: March 3, 2026**

Jalen Demere Gibson appeals from the order that dismissed his petition filed pursuant to the Post Conviction Relief Act ("PCRA"). We affirm.

Appellant is serving a sentence of life imprisonment for the first-degree murder of Tevin Sitton ("Victim"), who was shot in the head three times from the back seat of a white Chevy Malibu in Johnstown, Pennsylvania on April 3, 2017. At his trial, Appellant was identified as the shooter by Clifford Eddins, the driver of the vehicle; Dennis Manson, Eddins's brother and the Malibu's front seat passenger; Million Smith, Victim's stepbrother who witnessed the shooting; and Elmo Smith, Victim's stepfather, who saw Appellant in the back seat of the Malibu as it left the scene. Surveillance footage corroborated their testimony.

Appellant's defense was misidentification. He wished to suggest to the jury that Victim was a drug dealer, providing the motivation for whomever perpetrated the murder, by offering evidence that a postmortem search of Victim's home yielded narcotics and firearms. However, the trial court granted the Commonwealth's motion *in limine* and excluded that evidence.

Appellant chose not to testify in his defense, a decision that was confirmed by an on-the-record colloquy. That colloquy did not delve into whether Appellant desired the court to give a jury instruction explaining that no adverse inference may be taken from his failure to testify. While the trial court omitted the standard suggested jury instruction on that topic, it did charge that Appellant was presumed innocent and had no burden to offer any evidence.

On direct appeal, Appellant did not challenge the absence of the no-adverse-inference instruction. However, he did contest the trial court's exclusion of evidence ostensibly establishing that Victim dealt illicit drugs. We declined to award relief, opining that his theory was speculative since "there was no evidence presented that Victim was a drug dealer." **Commonwealth v. Gibson**, 229 A.3d 384, 2020 WL 1518056, at *4 (Pa.Super. 2020) (non-precedential decision). We continued:

> [T]he threshold inquiry with respect to the admission of evidence is whether the evidence is relevant. Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence. The fact that police found marijuana and firearms in Victim's residence the day after the homicide did not make it more probable or not that Appellant shot Victim or that

- 2 -

> Victim was a drug dealer, in the absence of an indication of the amount of marijuana. Finally, there was extensive evidence establishing that Appellant was the shooter. We agree with the trial court that "Appellant's purpose for attempting to introduce this evidence . . . to support the allegation that the victim was a drug dealer and thus may have been killed by an unnamed person is hypothetical and irrelevant." Moreover, the evidence that Appellant was the shooter was overwhelming.

*Id*. (cleaned up).

Finding no merit in any of Appellant's issues, this Court affirmed his judgment of sentence. *Id*. at *7. On December 9, 2020, our Supreme Court declined his petition for allowance of appeal. *See Commonwealth v. Gibson*, 243 A.3d 3 (Pa. 2020). Since Appellant did not seek review in the Supreme Court of the United States, his judgment of sentence became final ninety days later, on March 9, 2021. *See* 42 Pa.C.S. § 9545(b)(3); U.S.Sup.Ct.R. 13(1).

Appellant initiated the instant PCRA proceedings by filing a timely, counseled petition on January 3, 2022. Counsel amended the petition before obtaining leave to withdraw in favor of substitute counsel, who filed a second amended petition in July 2023. The PCRA court held a hearing over two days. After the parties submitted post-hearing briefs, the court denied Appellant's petition by an opinion and order entered December 16, 2024.[1]

_____

[1] The order was filed on December 13, 2024, but service upon the parties was noted on the docket on December 16, 2024. Hence, the latter is its date of entry. *See* Pa.R.A.P. 108(a)(1).

- 3 -

Appellant timely appealed, and both Appellant and the PCRA court complied with Pa.R.A.P. 1925. Appellant presents the following questions for our consideration:

1.  A.  Did trial counsel perform deficiently when he failed to [e]nsure that his client was subject to a colloquy as to whether he wished to request that the court provide a no-adverse inference instruction, even though counsel discussed related topics with his client?

    B.  Did counsel's deficient performance cause structural error related to Appellant's right against self-incrimination, such that prejudice need not be shown? Alternatively, does Appellant show prejudice arising from counsel's error?

2.  Did trial counsel perform ineffectively when he failed to properly litigate the Commonwealth's motion *in limine* related to the presence of a cache of drugs and weapons located in a secret vault in the Victim's home?

Appellant's brief at 1-2 (cleaned up).

We begin with the applicable legal principles. "[W]e review an order dismissing or denying a PCRA petition as to whether the findings of the PCRA court are supported by the record and are free from legal error." *Commonwealth v. Howard*, 285 A.3d 652, 657 (Pa.Super. 2022) (cleaned up). Ultimately, "[i]t is an appellant's burden to persuade us that the PCRA court erred and that relief is due." *Commonwealth v. Stansbury*, 219 A.3d 157, 161 (Pa.Super. 2019) (cleaned up).

This Court has summarized the law pertinent to challenges to counsel's performance as follows:

[T]o establish a claim of ineffective assistance of counsel, a defendant must show, by a preponderance of the evidence,

- 4 -

ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. The burden is on the defendant to prove all three of the following prongs: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.

We have explained that a claim has arguable merit where the factual averments, if accurate, could establish cause for relief. Whether the facts rise to the level of arguable merit is a legal determination.

*Commonwealth v. Sandusky*, 203 A.3d 1033, 1043 (Pa.Super. 2019) (cleaned up). The petitioner's failure to sustain any prong of the test defeats the claim. *See*, *e.g.*, *Commonwealth v. Rivera*, 199 A.3d 365, 374 (Pa. 2018).

Appellant first claims that trial counsel failed to protect his rights concerning the no-adverse-inference jury instruction. That charge "directs the jurors that they may not draw any derogatory insinuation from a defendant's failure to testify on his own defense, because the defendant has the unqualified right not to take the stand if he so chooses." *Commonwealth v. Perez*, 103 A.3d 344, 348 (Pa.Super. 2014).

Our Supreme Court has ruled that, "as a matter of Pennsylvania constitutional law, as under the United States Constitution, criminal defendants in this Commonwealth are entitled to a 'no-adverse-inference' jury instruction, when a timely request is made to the trial court." *Id*. (cleaned up); *see also Carter v. Kentucky*, 450 U.S. 288, 300 (1981) ("[T]he Fifth

- 5 -

Amendment requires that a criminal trial judge must give a 'no-adverse-inference' jury instruction when requested by a defendant to do so.").  Further, our High Court held in **Commonwealth v. Thompson**, 674 A.2d 217 (Pa. 1996), that "the no adverse inference instruction shall be given absent an express on[-]the[-]record colloquy by the defendant waiving the charge." **Id**. at 222.

In this Court, Appellant does not assert that he is entitled to relief because his trial counsel was ineffective in failing to request the instruction. Indeed, he concedes that such a claim must fail because "counsel had a reasonable tactic" in deciding not to draw the jury's attention to the fact that Appellant opted not to testify.  **See** Appellant's brief at 9.  **Accord Commonwealth v. Koehler**, 36 A.3d 121, 146 (Pa. 2012) (observing that counsel in some circumstances may forgo objections and instructions to avoid highlighting the issue for the jury); **Commonwealth v. Milliard**, 260 A.3d 143, 2021 WL 2936745, at *6 (Pa.Super. 2021) (non-precedential decision) (rejecting ineffectiveness challenge where, *inter alia*, counsel omitted the no-adverse-inference instruction as a matter of trial strategy to avoid "drawing focus to the fact the defendant did not testify").

Instead, Appellant asks us to grant him relief based upon counsel's failure to ensure that the court conducted a **Thompson** colloquy before proceeding without the instruction.  The PCRA court rejected this claim upon

determining that Appellant suffered no prejudice. See PCRA Court Opinion, 12/13/24, at 9-10; PCRA Court Opinion, 2/19/25, at 3.

Appellant acknowledges that **Thompson** expressly declined to "place the burden on counsel to discuss" the no-adverse-inference instruction with a non-testifying defendant in every case. **See** Appellant's brief at 19 (quoting **Thompson**, 674 A.2d at 222) He also correctly observes that this Court has held that, "[i]f counsel fails to request a **Thompson** colloquy, the standard three-part ineffectiveness test governs the ineffectiveness analysis." **Id**. (citing **Commonwealth v. Stanley**, 830 A.2d 1021, 1027 (Pa.Super. 2003)).

Nonetheless, Appellant argues that he does not have to establish that he suffered prejudice from counsel's failure to discuss the pros and cons of a **Thompson** instruction with him and record his decision in a colloquy conducted on the record. He maintains that the **Thompson** Court's "carve-out of the type of information that a trial lawyer must discuss with a non-testifying client," and its "refusal to consider the failure to discuss this valuable constitutional right as structural error," have been undermined by subsequent decisions. **See** Appellant's brief at 21.

Specifically, Appellant emphasizes that, in eschewing a mandate that attorneys discuss the no-adverse-inference instruction with their clients in all cases, the **Thompson** Court cited authority holding that counsel is not ineffective for failing to advise a defendant about the collateral consequences of a guilty plea. However, in **Padilla v. Kentucky**, 559 U.S. 356 (2010), the

United States Supreme Court held that "counsel must inform her client whether his plea carries a risk of deportation." *Id*. at 374 (remanding for a determination of whether the defendant was prejudiced by counsel's omission).

Appellant also suggests that **Thompson** was undercut by our High Court's decision in **Commonwealth v. Taylor**, 309 A.3d 754 (Pa. 2024), holding that structural error was present where, in adjudicating a petition to have a juvenile's case transferred to adult criminal court, the court violated his "Fifth Amendment right by, in effect, conditioning its ultimate finding of the juvenile's amenability to treatment, supervision, and rehabilitation upon a requirement that the juvenile admit guilt for the offenses he is alleged to have committed." **Id**. at 783. Since the right to a no-adverse-inference instruction is also grounded in the Fifth Amendment, Appellant argues that a waiver of the right to include it in the jury charge in the absence of a colloquy likewise is a structural error requiring no proof of prejudice. **See** Appellant's brief at 22.

Finally, Appellant posits that even if counsel's omission was not ineffective *per se*, he is able to demonstrate prejudice. Although admitting that "there was certainly ample evidence against Appellant," he insists that "the Commonwealth's case was far from overwhelming." *Id*. at 22. He points to the lack of a motive for him to kill Victim, the unreliability of the identifications of Eddins and Manson given their presence in the vehicle from

which the shots were fired and motivation to point the blame elsewhere, along with raising the overall "vagaries of eyewitness identification" to question the identifications made by Victim's family members. *Id*. at 23-24.

We are unpersuaded that the lack of a *Thompson* colloquy was a structural error entitling Appellant to relief in the absence of a showing that he was prejudiced by the omission. The *Padilla* decision, concerning how changes to immigration law have impacted the knowing element of guilty pleas, simply bears no relation to the issue before us. Further, as noted above, a *Padilla* violation is not *per se* ineffectiveness. Nor do we see how the *Taylor* ruling that a Fifth Amendment violation in the form of a forced admission of guilt irredeemably tarnished a juvenile certification proceeding undermines the holdings of *Thompson* and its progeny, namely that a defendant who has **not** been compelled to give evidence against himself must establish that the jury's verdict was likely to be different if it had heard the no-adverse-inference instruction.

Therefore, we apply our controlling precedent which provides that, "when counsel fails to have [a *Thompson*] colloquy conducted, the standard three-part ineffectiveness test should govern the ineffectiveness analysis." *Stanley*, 830 A.2d at 1027; *see also Commonwealth v. Nichols*, 328 A.3d 522, 2024 WL 479297 (Pa.Super. 2024) (non-precedential decision), *appeal denied*, 338 A.3d 109 (Pa. 2025) (applying *Stanley* to require proof of

prejudice where the defendant did not expressly waive the right to the no-adverse-inference instruction).

In so doing, we readily discern that the PCRA court did not err in finding an absence of prejudice in this case. As it observed: "In **Perez**, the Superior Court concluded that where the evidence of a homicide defendant's guilt is so compelling such that there is no realistic likelihood that a jury would reach a not guilty verdict [if the instruction were given], the defendant cannot establish prejudice for purposes of the PCRA's ineffective assistance of counsel test." PCRA Court Opinion, 2/19/25, at 2-3 (citing **Perez**, 103 A.3d at 351-52). Appellant's argument that the evidence against him was not sufficiently forceful is belied by this Court's express finding in his direct appeal that "the evidence that Appellant was the shooter was overwhelming." **Gibson**, 2020 WL 1518056, at *4. As detailed at the outset, this was not a case of circumstantial evidence or stranger eyewitness identification. Here, four people familiar with Appellant identified him as the man in the back of the Malibu who shot Victim, and their testimony was not only consistent with one another, but corroborated by surveillance footage. We have declined to find prejudice under similar circumstances. **See Perez**, 103 A.3d at 352 (holding ineffectiveness claim concerning absence of no-adverse-inference instruction failed due to lack of prejudice where multiple eyewitnesses identified Perez and forensic evidence corroborated their testimony).

Furthermore, Appellant's jury was charged on many of the key elements of the no-adverse-inference instruction. The standard **Thompson** instruction is as follows:

> It is entirely up to the defendant in every criminal trial whether or not to testify. [He] [She] has an absolute right founded on the Constitution to remain silent. You must not draw any inference of guilt, or any other inference adverse to the defendant, from the fact that [he] [she] did not testify.

PCRA Court Opinion, at 8 (quoting Pa. S.S.J.I. (Crim) 3.10). While that was not given, the jury nonetheless heard:

> A fundamental principle of our system of criminal law is a defendant is presumed to be innocent. The mere fact he was arrested and is charged with crimes is not evidence of his guilt. Furthermore, a defendant is presumed to remain innocent throughout the trial unless and until you conclude, based upon careful and impartial consideration of the evidence, that the Commonwealth has proven him guilty beyond a reasonable doubt of the charges made against him. It's not the defendant's burden to prove that he is not guilty. Instead, it is the Commonwealth that always has the burden of proving each and every element of the crimes charged and that the defendant is guilty of those crimes beyond a reasonable doubt. A person accused of a crime is not required to present evidence or to prove anything in his own defense.

*Id*. (citing N.T. Trial, 8/7/18, at 44-45).

This Court has ruled that instructions like the one given in Appellant's case defeated the prejudice prong of a **Thompson**-based ineffectiveness claim. **See Commonwealth v. Stevenson**, 313 A.3d 157, 2024 WL 48289, at *5 (Pa.Super. 2024) (non-precedential decision) ("Although the trial court did not expressly give a no adverse inference charge, its instructions were

- 11 -

sufficiently equivalent. . . . [Stevenson's] claim fails because he failed to establish prejudice to a degree that would have altered the outcome of trial.").

Overall, we are not convinced that there was a reasonable likelihood of a different result had Appellant been given a colloquy and elected to have the no-adverse instruction in the jury charge. Given the compelling evidence of Appellant's guilt and the jury's awareness of the Commonwealth's exclusive burden to produce evidence sufficient to overcome the presumption of his innocence, we have no basis to conclude that the verdict would have been anything other than guilty. Therefore, no relief is due.

Appellant's remaining claim is that trial counsel failed to properly contest the Commonwealth's motion *in limine* regarding the contraband found at Victim's home after the murder. More particularly, a search warrant executed at Victim's home the day after the murder revealed an underground vault containing marijuana in bulk, packaging materials, and a horde of firearms including assault rifles with extended clips. *See* Appellant's brief at 12-14. A smaller bag of marijuana was recovered from outside the residence not far from where Victim was killed. *Id*. at 14. The Commonwealth moved to exclude the evidence because it was impermissible other-bad-acts evidence that had no relation "to any defense that could possibly be raised by [Appellant]." N.T. Pretrial Hearing, 4/17/18, at 3. To oppose the motion, trial counsel pointed to a photograph showing Victim with similarly-packaged marijuana and argued that "[b]eing a drug dealer brings violence, and this

- 12 -

man could have had a number of people who wanted him for whatever reason related to the drugs." *Id*. at 4. Citing the marijuana found outside the home, counsel questioned: "[C]ould there have been a drug deal?" *Id*. at 5.

In appealing the exclusion of the evidence, Appellant maintained "that Victim was a drug dealer and as such, would have many enemies with a motive to kill him." *Gibson*, 2020 WL 1518056, at *4 (cleaned up). As noted above, we rejected Appellant's challenge, observing that the certified record lacked evidence that Victim was in fact a drug dealer given "the absence of an indication of the amount of marijuana." *Id*. He seizes upon this statement to contest counsel's performance in litigating the appellate claim.

Specifically, Appellant assails counsel's failure to proffer the available evidence depicting the full extent of the narcotics operation at Victim's residence. Appellant stresses that counsel acknowledged that he had no strategic basis for not producing the photographic evidence to support his argument that he should be permitted to offer them to the jury to support "the theory that [V]ictim was shot as part of a drug deal, or related to his drug business." Appellant's brief at 14. Finally, Appellant asserts that he was prejudiced because, were it not for counsel's omissions, the result of the *in limine* hearing and the trial would have been different. *Id*. at 27.

The PCRA court observed that this Court's rejection of the challenge on Appellant's direct appeal was based upon relevancy as much as the speculative nature of Victim's involvement with illicit drug sales. As we noted

*supra*, we expressly agreed with the trial court that "[t]he fact that police found marijuana and firearms in Victim's residence the day after the homicide did not make it more probable or not that Appellant shot Victim," and opined that, in any event, "the evidence that Appellant was the shooter was overwhelming." *Gibson*, 2020 WL 1518056, at *4.

The PCRA court also found that no prejudice resulted from counsel's failure to contest the Commonwealth's motion utilizing the full extent of the evidence that Victim was a drug dealer. The court explained:

> Evidence as to the quantity of marijuana or the number of weapons found would not impact or alter: the identification of [Appellant] as the shooter by Eddins, Manson, and Million; Elmo's identification of [Appellant] as being the back seat passenger in the Malibu immediately after he heard gunshots; [and] the video footage showing [Appellant] wearing a sweatshirt that appeared to be the same as worn by the shooter. In short [Appellant] failed to establish that anything in the evidence from inside [Victim's] home would have exonerated him or made it probable that [Victim] was killed by a third party.

PCRA Court Opinion, 12/13/24, at 11-12. Therefore, the court would have excluded the evidence even if counsel performed as Appellant claims he should have done.

Upon this record, we agree with the PCRA court that the claim is meritless. Victim's purported drug dealing, possibly during the incident that resulted in his death, may have suggested a motive for the murder, but it did not make it more or less likely that Appellant was the person who killed him. Since the evidence was thus properly excluded as irrelevant, Appellant's claim fails the arguable merit prong. Further, Appellant has not proven prejudice

- 14 -

because the outcome of the motions hearing and the trial are not likely to have been different had counsel more thoroughly established the existence of a narcotics operation run out of Victim's residence. Therefore, Appellant has failed to meet his burden. **See Stansbury**, 219 A.3d at 161.

In sum, since Appellant has not convinced us that the PCRA court's order is the result of an error of law or abuse of discretion, we have no cause to disturb it.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

3/3/2026